**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CALVIN B. FEWS, | ) | No. C 03-3770  PJH (PR) |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANT'S MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| Lieutenant PEREZ, | ) | (Docs 18 & 35) |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a civil rights case filed pro se by a state prisoner.  Defendant has moved for summary judgment on the ground that there are no material facts in dispute and that he is entitled to judgment as a matter of law.  Plaintiff has filed an opposition.  He also has filed a motion for production of documents.  The motions are submitted.

**DISCUSSION**

A.    Request for production

Plaintiff has filed a request for production of documents, despite being warned in an earlier order that he should not file discovery requests with the court.  The request for production will be stricken.[1]  See Fed. R.Civ.P. 5(d) (discovery not to be filed with the court).

///

_____

[1]  Plaintiff has not asked that the motion for summary judgment be denied or ruling withheld to allow further discovery.  See Fed. R.Civ.P. 56(f).  Even if had, the request would be denied because the discovery sought does not go to the basis for this ruling.

1    B.    Motion for summary judgment

2          1.    Standard of Review

3          Summary judgment is proper where the pleadings, discovery and affidavits show

4    that there is "no genuine issue as to any material fact and that the moving party is

5    entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those

6    which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S.

7    242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient

8    evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

9          The moving party for summary judgment bears the initial burden of identifying

10   those portions of the pleadings, discovery and affidavits which demonstrate the

11   absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317,

12   323 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir.

13   2000).  When the moving party has met this burden of production, the nonmoving party

14   must go beyond the pleadings and, by its own affidavits or discovery, set forth specific

15   facts showing that there is a genuine issue for trial.  If the nonmoving party fails to

16   produce enough evidence to show a genuine issue of material fact, the moving party

17   wins.  Id.

18         It is not the task of the district court to scour the record in search of a genuine

19   issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

20   nonmoving party has the burden of identifying with reasonable particularity the evidence

21   that precludes summary judgment.  Id.  If the nonmoving party fails to do so, the district

22   court may properly grant summary judgment in favor of the moving party.  Id.

23         2.    Analysis

24         Defendant contends that he is entitled to summary judgment because (1) there is

25   no genuine issue of material fact that he was not deliberately indifferent to plaintiff's

26   serious medical need; and (2) he is entitled to qualified immunity.

27

28                                            2

a.   Declarations

Plaintiff has not supported his opposition with a declaration, nor has he verified it so the opposition itself could serve as a declaration.  As a result, the only evidence in opposition to the motion is plaintiff's complaint, which is verified.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence).

The following is a summary of plaintiff's allegations in the complaint.  On February 18, 2003, plaintiff complained to staff in his housing unit of a severe toothache.  An officer called and obtained an emergency dental appointment for the next day, February 19, at 8:00 am.  Plaintiff was given clove oil, a numbing agent, and high-dose Motrin, a pain reliever.  At 3:00 am on the 19th plaintiff was informed he was being transferred to Corcoran State Prison.  He informed staff that he could not travel because of his pain and that dental surgery was scheduled.  He was told he would have to have a medical examination before he could be removed from the bus list.  He was taken to the infirmary for the examination, where an MTA concluded he needed oral surgery.  Defendant then appeared on the scene, told him that San Quentin was overcrowded, that he was not going to listen to any complaints, and that plaintiff would have to get on the bus.  When plaintiff told defendant about the scheduled dental surgery, defendant said that he did not care and that plaintiff was getting on the bus.  Defendant told him he would receive prompt medical attention at Corcoran.  In fact, however, he did not receive dental care at Corcoran until March 5, 2003, although he continued to receive the high-dose Motrin until then.  He asserts that he experienced "unbearable pain" until the surgery was performed.  Compl. at 3 & unnumbered supplemental page.

In his declaration, defendant Perez says that on February 19 he was watch commander.  At that time there was a standing order from "the deputy warden" requiring

3

1   that because of overcrowding, transfers could be postponed on medical grounds only if

2   the medical condition was "life threatening."  Defendant states that he did not have

3   authority or discretion to make exceptions to the rules for inmate transfers, that his

4   "professional responsibility" was to comply with the standing order.  He also says that it

5   was not his professional responsibility to arrange for or coordinate medical treatment.

6        When defendant was informed that plaintiff was at the infirmary complaining of a

7   toothache, he went there to determine whether the condition was life-threatening, the

8   only permissible reason for delaying the transfer under the deputy warden's order.

9   Plaintiff informed him of the scheduled dental surgery and that he had been given pain

10  medication.

11       Defendant states that "[a]t San Quentin, it is standard procedure for an inmate

12  who is scheduled for medical treatment to be given a medical ducat, which is

13  confirmation both for custody and medical staff that an inmate has in fact been

14  scheduled at a specific time for a specific medical appointment or medical procedure.

15  Without a ducat, medical treatment, such as the surgery inmate Fews told me that he

16  was supposed to have, may not proceed."  Defendant told plaintiff that since he did not

17  have a ducat, and could not receive medical treatment until he obtained one, he likely

18  would receive treatment as quickly at Corcoran as at San Quentin.

19       Defendant concluded that Fews' condition was not life-threatening and that, as a

20  consequence, he would have to be transferred.  He explained to plaintiff that he would

21  be examined at Corcoran and that the medical facilities at Corcoran were probably

22  better than those at San Quentin.  Defendant said all this to plaintiff simply to better

23  explain the situation.   Fews "indicated" that he understood.

24  Decl. of defendant Perez at 1-3.

25       The parties versions of the facts are not in substantial conflict.  Plaintiff, of

26  course, does not include the fact that the deputy warden had a standing order not to

27

28                                          4

1  delay transfers on medical grounds unless the condition was life-threatening, nor does

2  he mention the ducat issue.  He also does not refer to it in his opposition, so even if the

3  opposition were verified there would be no genuine issue of fact on that point.  The

4  closest thing to a dispute, really, is the implication as to defendant's manner – Fews'

5  version has defendant insisting that he was not going to listen to any complaints and that

6  Fews was going, period; whereas defendant Perez says he patiently explained the

7  situation to plaintiff.  Arguably this might be material to whether defendant was

8  deliberately indifferent, so as to this point the court will treat plaintiff's version as true.

9                                  b.        Deliberate indifference to a serious medical need

10          Deliberate indifference to serious medical needs violates the Eighth

11  Amendment's proscription against cruel and unusual punishment.  Estelle v. Gamble,

12  429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),

13  overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th

14  Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an

15  examination of two elements: the seriousness of the prisoner's medical need and the

16  nature of the defendant's response to that need.  Id. at 1059.

17          A "serious" medical need exists if the failure to treat a prisoner's condition could

18  result in further significant injury or the "unnecessary and wanton infliction of pain."  Id.

19  The existence of an injury that a reasonable doctor or patient would find important and

20  worthy of comment or treatment; the presence of a medical condition that significantly

21  affects an individual's daily activities; or the existence of chronic and substantial pain

22  are examples of indications that a prisoner has a "serious" need for medical treatment.

23  Id. at 1059-60.  Serious medical needs may include dental care.  Hunt v. Dental Dep't ,

24  865 F.2d 198, 200 (9th Cir. 1989).

25          A prison official is deliberately indifferent if he knows that a prisoner faces a

26  substantial risk of serious harm and disregards that risk by failing to take reasonable

27

28                                          5

1    steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official

2    must not only "be aware of facts from which the inference could be drawn that a

3    substantial risk of serious harm exists," but he "must also draw the inference."  Id.  If a

4    prison official should have been aware of the risk, but was not, then the official has not

5    violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of

6    Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

7            Defendant contends that plaintiff has failed to state a claim.  Defendant does not,

8    however, treat the complaint as true for purposes of this argument, but rather contends

9    that he was just following orders and that in the absence of a ducat plaintiff could not

10   have received treatment that day anyway.  Neither of the crucial facts -- the deputy

11   warden's order, the absence of a ducat -- is alleged in the complaint.  Therefore,

12   defendant's argument on this point is really that there is no genuine issue of material

13   fact that he was not deliberately indifferent.

14           Most notably, defendant contends that he could not have been deliberately

15   indifferent because he was just following orders that prisoners were to be transferred

16   despite medical needs unless the condition was life-threatening.  However, the

17   definition of a serious medical need for constitutional purposes, set out above, is

18   nothing like as demanding a standard as "life-threatening."  Therefore it is possible for

19   the constitution's demands and those of authority to conflict -- for instance, if an order

20   like that here is applied to an inmate with a non-life-threatening serious medical need.

21           In such circumstances the demands of the constitution must prevail.  "Since

22   World War II, the 'just following orders' defense has not occupied a respected position

23   in our jurisprudence, and officers in such cases may be held liable under § 1983 if there

24   is a "reason why any of them should question the validity of that order." O'Rourke v.

25   Hayes, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004) (quoting Brent v. Ashley, 247 F.3d

26   1294, 1306 (11th Cir. 2001); c.f. California Attorneys for Criminal Justice v. Butts, 195

27

28                                              6

F.3d 1039, 1049-50 (9th Cir. 2000) (denying qualified immunity to defendants who interrogated suspects in violation of <u>Miranda</u>, notwithstanding training material permitting such interrogations and Supreme Court opinions allowing the use of such interrogations for impeachment).  Perhaps if the order were not flagrantly unconstitutional the fact that it existed could be considered in deciding whether a defendant's actions amounts to deliberate indifference, but that issue does not arise here:  It is clearly established that prison workers may not be deliberately indifferent to an inmate's serious medical needs, serious medical needs defined not as conditions which are life-threatening but as those which, among other things, would result in "unnecessary and wanton infliction of pain."  <u>McGuckin</u>, 974 F.2d at 1059; <u>see</u> <u>also</u> <u>Carey v. Nevada Gaming Control Board</u>, 279 F.3d 873, 881 (9th Cir. 2002) (qualified immunity issue; defendants who act in reliance on a state statute are generally presumed to act reasonably, even if the statute is later found to be unconstitutional, but if the statute is "patently violative of fundamental constitutional principles," the officials may nevertheless be held liable).

Defendant is correct that no genuine issue exists as to the facts, but incorrect that he is entitled to judgment as a matter of law on the deliberate indifference prong.

As to the serious medical need prong, a medical need is serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." <u>McGuckin</u>, 974 F.2d at 1059.  The only clear statement in plaintiff's papers that he was in pain at San Quentin, aside from the implication from his needing emergency dental surgery, is his statement that "because of the pain petitioner [sic] was in, and the [scheduled] emergency dental surgery ..., he was unable to travel." Compl. at 3.  He also asserts that he "experienced unbearable pain until the decayed tooth was removed on 3/3/03," <u>id.</u> at unnumbered page 3a, but it is unclear whether this sentence refers to when he was at San Quentin or only to the period between when he

7

arrived at Corcoran and when the tooth was pulled.  Against this is the fact that he had
been given clove oil, which he describes as a numbing agent, and high-dose Motrin.  On
balance, although there is no genuine issue of fact as to this prong, defendant has failed
to establish that he is entitled to judgment as a matter of law on this prong.

As to defendant's contention in his declaration that plaintiff could not have
received medical attention at San Quentin that day because he did not have a ducat,
there is no  evidence as to how long it takes to get a ducat or what procedure is
followed in issuing them.  Although it is undisputed that plaintiff did not have a ducat, the
absence of any evidence as to whether he might have yet gotten one if he had not been
transferred leaves open the question of whether the transfer in fact caused plaintiff to
suffer additional pain.  The conversation between Fews and defendant occurred around
3:00 am; defendant does not say that plaintiff could not have obtained the ducat in time
to have the surgery at 8:00, although his telling plaintiff that since he did not have a ducat
he probably would be seen as quickly at Corcoran as at San Quentin might be taken to
imply this.  It may be that because the dental work had only been scheduled the previous
day, the medical department intended issuing the ducat that morning; nothing in the
evidence supports or rebuts that possibility.  Finally, defendant's declaration says that
medical procedures "may not" proceed without a ducat.  This is ambiguous, in that "may
not" could mean "is not permitted," but also could mean "might or might not."  Thus
defendant has not even established that the procedure would not have been performed
without the ducat. Defendant has failed to establish that he is entitled to judgment as a
matter of law on this point.

c.    <u>Qualified immunity</u>

The defense of qualified immunity protects "government officials . . . from liability
for civil damages insofar as their conduct does not violate clearly established statutory
or constitutional rights of which a reasonable person would have known."  <u>Harlow v.</u>

8

Fitzgerald, 457 U.S. 800, 818 (1982).  The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).  Qualified immunity is particularly amenable to summary judgment adjudication.  Martin v. City of Oceanside, 360 F.3d 1078, 1081 (9th Cir. 2004).

The threshold question is:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Saucier, 533 U.S. at 201.  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  Saucier, 533 U.S. at 201.  On the other hand, if a violation could be made out on the allegations, the next sequential step is to ask whether the right was clearly established.  Id.  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.  Id. at 202.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Id.  If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.

A defendant must show that a reasonable officer could have believed that the conduct was lawful in light of clearly established law and the information the officer possessed.  Galvin v. Hay, 374 F.3d 739, 757 (9th Cir. 2004).  Whether a reasonable official could have believed the action taken was lawful is a mixed question of law and

9

1  fact: "It involves an objective test of whether a reasonable official could have believed

2  that his conduct was lawful in light of what he knew and the action he took." <u>Sinaloa</u>

3  <u>Lake Owners Ass'n v. City of Simi Valley</u>, 70 F.3d 1095, 1099 (9th Cir. 1995).

4        If the essential facts are undisputed, or no reasonable juror could find otherwise,

5  the qualified immunity question is appropriately one for the court.  <u>See Sinaloa Lake</u>

6  <u>Owners Ass'n v. City of Simi Valley</u>, 70 F.3d 1095, 1100 (9th Cir. 1995) (citing <u>Hunter v.</u>

7  <u>Bryant</u>, 502 U.S. 224, 227-28 (1991)).

8        The qualified immunity inquiry is separate from the constitutional inquiry for a

9  claim of deliberate indifference under the Eighth Amendment.  <u>Estate of Ford v. Caden</u>,

10  301 F.3d 1043, 1053 (9th Cir. 2002) (extending <u>Saucier</u> to Eighth Amendment claims).

11  That summary judgment is denied as to whether there was a constitutional violation

12  does not necessarily preclude a finding of qualified immunity.  <u>Id.</u>

13        As to the first prong of the <u>Saucier</u> test, plaintiff has adequately alleged that

14  defendant's actions violated a constitutional right, as discussed in the section above.

15        As to the second prong, whether a reasonable officer could have believed his

16  conduct was lawful in the circumstances, defendant contends that his actions were

17  reasonable because he was just following orders.  This is not a valid basis for qualified

18  immunity.  <u>See</u> <u>Carey v. Nevada Gaming Control Board</u>, 279 F.3d 873, 881 (9th Cir.

19  2002) (defendants who act in reliance on a state statute are generally presumed to act

20  reasonably, even if the statute is later found to be unconstitutional, but if the statute is

21  "patently violative of fundamental constitutional principles," the officials may nevertheless

22  be held liable).  This case involves a superior's order, rather than a state statute as in

23  <u>Carey</u>, so it was less reasonable to rely upon it, and  most importantly, as discussed in

24  the section above, the order was patently unconstitutional when applied to an inmate

25  with a serious medical need.

26        However, the test for this <u>Saucier</u> prong is objective -- the question is whether it

27

28                                                10

1  would be clear to a reasonable officer in the defendant's circumstances that his or her

2  conduct was unlawful, not whether this particular defendant's proffered reasons hold

3  water. <u>Saucier</u>, 533 U.S. at 201.  Plaintiff had received pain medication at San Quentin

4  and defendant believed that because incoming prisoners at Corcoran are given

5  immediate medical examinations, plaintiff would receive treatment for his dental needs

6  as quickly there as at San Quentin.  Given this, a reasonable officer could have

7  perceived that the risk of harm to plaintiff was not too high.  Defendant is entitled to

8  qualified immunity.  <u>See</u> <u>California Attorneys for Criminal Justice v. Butts</u>, 195 F.3d at

9  1049-50 (it is possible for a prison official to know all of the facts alleged by plaintiff and

10  to understand that he cannot deliberately disregard a substantial risk of harm to a

11  prisoner, and yet to mistakenly, though reasonably, perceive that the risk of harm is not

12  too high; such an official is entitled to qualified immunity).

13       Because plaintiff demands only damages, which are barred by qualified

14  immunity, the motion for summary judgment will be granted.

<b>CONCLUSION</b>

16       Plaintiff's motion to compel (doc 35) is STRICKEN.  For the foregoing reasons,

17  defendant's motion for summary judgment (doc 18) is GRANTED.

18       The clerk shall close the file.

19  SO ORDERED.

21  DATED: September 6, 2005.

23  PHYLLIS J. HAMILTON
   United States District Judge